English v. Helms.

Judgment affirmed.

---

### [228] ENGLISH V. HELMS.

It is not essential that an instrument be described by its right name in the pleadings if a copy be given and there be a statement in the petition or other pleading that the copy is attached or exhibited as a part of it.

That portion of the first section of the act of 1840, concerning conveyances, which reads, "And every instrument to which the person making the same shall affix a scroll by way of seal shall be adjudged and holden to be of the same force and obligation as if it were actually sealed; provided the person making the same shall, in the body of the instrument, recognize such scroll as having been affixed by way of seal," is a restraining clause, and must be confined to instruments for the conveyance of estates of inheritance or freehold or for a term of more than five years in land and tenements. (Note 49.)

*Quere?* as to what will amount to "a recognition in the body of the instrument" that a scroll has been affixed by way of seal.

In instruments which are not within the purview of the first section of the act of 1840, concerning conveyances, the party's intention to seal, whether indicated in the body of the instrument or elsewhere, should have its effect. The word seal written or affixed in a scroll or flourish after his name indicates clearly his purpose, and *prima facie* should be held for his seal. (Note 50.)

Appeal from Liberty.

*J. B. Jones*, for appellant.

*Franklin*, for appellee.

HEMPHILL, CH. J. This action was brought on three promissory notes described as being under seal; and the ground of the objection to their introduction in evidence, and on which a reversal of the judgment is sought, is that they are unsealed instruments, and therefore variant from their description in the petition. There is no statement in the petition that copies of the notes are attached or exhibited as a part of the petition, or that they were filed at all; though it appears probable, from the position of the copies in the record, that they were actually filed with the petition and served on the defendant.

English v. Helms.

Had such been the case, the question of variance could not have arisen. It is not essential that the instrument be described by its right name in the pleadings, provided a copy be given; for by this the question of identity must be settled. The defendant cannot be misled or surprised if the original offered in evidence corresponds with the copy in the petition, although the instrument may be defectively stated in the pleadings. The facts in relation to the character or terms of an instrument cannot be set forth more clearly than by describing or copying it as it is written; and as this is the most safe method, it should be adopted, particularly where there may be a doubt, as to the legal effect or character of the instrument. The defendant could not then be jeopardized by the bringing another suit for the same cause of action, as the former judgment would bar a recovery. And the question whether the cause of action is the same would be determined, not by the averments of the first petition, but by the copy of the instrument as set forth in the record. (Lockhart v. Dewees, 1 Tex. R., 535; Roberts v. Black, 2 Tex. R., 416.)

As it is doubted whether copies of these notes were attached to the petition, it will be necessary to determine whether they were truly described as being sealed instruments. It seems that before the conquest of England by the Normans sealing was not much used, if at all, to authenticate contracts. Such of the Saxons as could write subscribed their names, and whether they could write or not, the sign of the cross was also affixed. The inability to write, which authorized an illiterate Saxon to use the sign of the cross as a substitute for a signature, induced the Normans to reject signatures altogether and affix waxen seals as evidence of the execution of instruments. This was confined at first to the king and higher nobility, but at the time of Edward the First every freeman and such of the more substantial villains as were to be put upon juries had their distinct particular seals, (2 Black. Com., 306; Shep. Touch., 56, 57; 4 Mc. R., 270:) and it was not until the statute of 29 C. II, c. 3, more than six hundred years after the [**230**] conquest, that the Saxon custom of signing was again made necessary in grants of land and other species of deeds.

It appears, then, that the use of seals in England had its origin in the necessities of ignorance; and as long as individuals had their distinct seals with particular devices, their substitution for a signature or their use with a signature might with some show of reason be regarded as the best evidence of the authenticity of a deed. But sealing with the seal of another or with a stick or any such like thing that would make a print was held to be good; and this mode of sealing certainly afforded no internal evidence of the seal being fixed by the maker of the deed. In England and some of the States it is still necessary to a seal that an impression should be made on wax or some tenacious substance; but in most of the States this mode of sealing has been disused to such an extent, says Chancellor Kent, as to induce the court to allow, but with certain qualifications in some of the States, a flourish with the pen at the end of the name or a circle of ink or scroll to be a valid substitute for a seal. (4 Kent. Com., 453.) The mode of sealing with a scroll was early introduced in the older States. In South Carolina it has been the usage since the revolution, and probably long before, and thus became a portion of the common law of those States in the same mode that sealing with wax became a portion of the common law of England.

That the practice of authenticating contracts between individuals by seal might be advantageously discontinued there is no question. It was not known until the introduction of the common law in 1840, nor am I aware that any injury has arisen or can arise from the want of seals. To require their use for the validity of certain instruments, while signing is sufficient for others, misleads the community, who are not likely to be apprised of distinctions which we know from experience to be perfectly idle, and which frequently occasion the entire destruction of the rights of parties. Whatever may be the case elsewhere, there can be but slight advantage from [**231**] maintaining the distinc-

tion in this State. The legal effects and incidents of contracts are generally not affected by the use of a seal. From this must be excepted conveyances of land and promissory notes, so far as relates to their privilege of negotiability, &c. But specialties are barred by the same limitations as simple contracts. They are entitled to no priority in the payment of the debts, and both are alike and equally chargeable on the real and personal property of a succession; and when made the foundation of an action, the adverse party is entitled to a profert of either species of contract, or, in other words, to have copies of them filed.

But as the distinction is recognized by law, and the custom of sealing with a scroll has generally superseded the impression upon an adhesive substance, I see no reason why one should be held any better evidence of sealing than the other. The impression upon wax can be more easily obliterated than the flourish with the pen, and the latter has this advantage, if no other, over the former mode. It may be said that any one may attach the scroll to the instrument, but this applies equally to the other mode, as any one may make an impression on wax, paste, &c.; and the law does not require it to be done with the particular seal of the obligor, or with any seal at all. Were separate seals with special devices in general use, and were the makers of instruments confined to the use of their own seals, there would then be some reason in requiring an impression to be made with these sales, and some advantages over flourishes with a pen; but there is none in sealing according to the ordinary usage.

In this case there is not only a scroll, but within this is written the word "seal." Can this be intended for any other purpose than as a declaration that he has affixed his seal? If written in his own handwriting, it is as susceptible of proof as his signature; and if in that of another, the fact of his assent can be established by the same evidence that would be required if a seal of wax had been used. If it be admitted (and it seems to be established by general usage, that a scroll [232] may be used as a seal, the question of whether it was actually affixed for that purpose becomes one of intention, but not more so than if an impression had been made on wax. In either case, if there be in the body of the instrument an acknowledgment that it is sealed, a seal or scroll affixed would raise a strong presumption that it was placed there for that purpose. But as the acknowledgment without the seal will not make an instrument a specialty, so if it be omitted, and the seal be actually affixed, its character or legal effect as a deed or specialty should not be destroyed. (Harp. R., 3; 1 Bibb R., 492.) It is well settled that it is the seal and not the acknowledgment of the party that constitutes the deed. (4 McC. R., 272; Bac. Abr., OBLIGATIONS, C., p. 159; 4 Comyn's Dig., 157.) Sealing and delivery are essential to a bond, yet there is no occasion to mention in the bond that it was sealed and delivered. (Bac. Abr., OBLIGATIONS.) In this case the intention of the party to seal seems as palpable as if he had used the words "witness my hand and seal." Let us suppose that he had written within the scroll "this is my seal:" his intention could certainly not be questioned; and it seems equally manifest when the word "seal" alone is used.

It may be said that, by the statute concerning conveyances, a scroll cannot be regarded as a seal unless the person making the same shall, in the body of the instrument, recognize such scroll as having been affixed by way of seal. It is extremely questionable whether any instrument is embraced in the provisions of the statute except conveyances of lands. The provision is found in an act concerning conveyances. That is the subject-matter of the statute; and unless the intention of the Legislature be very clear, such construction should not be given to the law as would extend its operation beyond its declared purpose. The provision referred to is found in the first section, in close connection with regulations relative to conveyances, as will be seen from the context, which is as follows: "No estate of inheritance or freehold or for a term of more than five years in lands and tenements shall be conveyed [233] from

## English v. Helms.

one to another unless the conveyance be declared by writing, sealed and delivered. And any instrument to which a person making the same shall affix a scroll by way of seal shall be adjudged and holden to be of the same force and obligation as if it were actually sealed; provided the person making the same shall, in the body of the instrument, recognize such scroll as having been affixed by way of seal; nor shall such conveyance be good against a purchaser for valuable consideration, not having notice thereof, nor any creditor, unless the same be acknowledged by the party or parties," &c. If the portion of the section in relation to sealing was intended to be merely parenthetical, the subject-matter being resumed at its close, it affords an instance of magical rapidity of change of intention which has perhaps few parallels in the history of legislation. But we cannot hold to this construction, and are disposed to limit the restriction on the use of scrolls to the particular instruments then in the legislative mind, if indeed, when properly construed, any restriction be imposed upon the use of scrolls even in those instruments.

At the introduction of this provision the practice of sealing with adhesive substances had been discontinued in most of the States where the common law prevailed, and the use of scrolls substituted. To require an acknowledgment to give the latter the force and validity of a seal has the appearance of an onerous discrimination, and tends to the prejudice and ruin of parties who may reasonably be supposed to be ignorant that sealing in one mode requires a recognition and in another it does not. Had the provision been that in no case should an instrument be considered sealed unless there was an acknowledgment of the party's intention in the body of the writing to that effect, its operation would have been salutary. A seal or scroll affixed would then leave but little doubt that the instrument had been actually sealed by the party. A better provision would be to abolish seals altogether; but since they exist and have their operation, I am not disposed to deprive [**234**] a scroll, at least with the word "seal" written within the circumflex, of its force by common usage as a seal.

If the true construction of the statute requires that in conveyances of lands a scroll must be acknowledged in the body of the instrument to give it the force of a seal, let it be given and enforced. But in other instruments not within the purview of the statute let the party's intention to seal, whether indicated in the body of the instrument or elsewhere, have its effect. The word "seal" written or affixed in a scroll or flourish after his name indicates clearly his purpose, and *prima facie* should be held for his seal. If it be denied, an issue of fact is formed, but until then it is the deed of the party, and must be so held. (8 S. & M. R., 580; 9 S. & M. R., 34; 10 S. & M. R., 411; 11 Ala. R., 568; 1 McMul. R., 313; 4 How. R., 363; 6 How. R., 152; 1 Pike R., 108; 4 Pike R., 195; 5 Pike R., 116; 4 Yerg. R., 528.)

Judgment affirmed.

Note 49.—Clopton v. Pridgen, 8 T., 308; Conner v. Antrey, 18 T., 427. Want of consideration in a sealed instrument must be asserted under a plea verified by affidavit. (Pierce v. Wright, 33 T., 631.)

Note 50.—Muckleroy v. Bethany, 23 T., 163.