## DOUGLASS, BROWN & CO. v. NEIL & CO.

1. Precisely how far garnishees may question a judgment rendered against their creditors, when the latter do not complain of the judgment, seems not to be settled.    They may see that the judgment has been correctly rendered against their creditors, and that, when paid by themselves, it will protect them against their creditors; and they may see that their liability under the garnishment is correctly ascertained, and that judgment against them be rendered in accordance with law; but they cannot be allowed to defeat the plaintiff's action on grounds which the defendant did not see fit to assume, or which he chose to waive.

2. Distinctions between legal and equitable rights being unknown in the judicial system of this State, if a party has rights cognizable either at law or in equity, he has a case within the jurisdiction of our courts.

3. In this State an ordinary suit for debt is maintainable by one firm against another, irrespective of the fact that the same person is a member of both firms, and thus appears as both plaintiff and defendant.

4. One partnership firm sued another by attachment, for debt, alleging that the defendants had abandoned the country, etc.    One member of the plaintiff firm was also a member of the defendant firm, and he, in the

name of the defendant firm, retained attorneys to defend the suit, who appeared and answered for the defendants ; but plaintiffs recovered against defendants, and the latter did not appeal.   There was no service of the attachment by publication, but it was levied on property of the defendants, and garnishment was served on appellants, who insist that the court below never acquired jurisdiction as against their creditors, the defendants.   *Held*, that by the defendants' appearance by attorney, and by the levy of the attachment on their property, the court below acquired jurisdiction both of their persons and their property.

5. In a suit commenced by attachment, the defendants took no exceptions to the attachment proceedings, but pleaded to the merits, and judgment was rendered against them ; after which garnishees traversed, by pleas, the affidavit for the attachment.   *Held*, that exceptions were properly sustained to the pleas.   It was not competent for garnishees thus to make for the defendants a defense which the latter did not make for themselves, and which, after judgment, would not have been available even to the defendants themselves.

6. A first continuance being sought for want of testimony, the affidavit disclosed the facts which the testimony was expected to prove.   *Held*, that the court below had the right to look to the pleadings, and to consider the relevancy and materiality of the proposed evidence, and if it was irrelevant or immaterial to the issues, it was not error to refuse the continuance.

APPEAL from Anderson.   Tried below before the Hon. John G. Scott.

Appellees were plaintiffs in the court below.   P. McDannell, M. McCarty, and James Neil constituted their firm of James Neil & Co.   McDannell made the affidavit, and instituted the attachment proceedings by which the suit was commenced against Quinn, Murphy & Neil, the defendants.   Nothing in the pleadings of the plaintiffs or the defendants showed that the defendant Neil was the same person as one of the plaintiffs ; but this fact was alleged by the appellants, who had been cited as garnishees, and who, after judgment in favor of plaintiffs against defendants, pleaded in abatement of the plaintiffs' suit that Neil was a member of both the firms.   Plaintiffs excepted to this plea for insufficiency, and their exceptions were sustained ; and this ruling is assigned for error.

McDannell's affidavit for the attachment alleged that the defendants had abandoned the country.   No issue on this alle-

34

gation was made by the defendants ; but the appellants traversed it by a plea, to which exceptions were also taken and sustained, and this is also relied on as error.

Like action was had on other pleas of the appellants, by which they sought to invalidate the attachment proceedings, and to impeach the judgment already recovered against the defendants by the plaintiffs ; but, inasmuch as the argument of counsel will disclose the nature of these pleadings, it is not necessary here to state it with particularity.

Attorneys appeared in the court below for Quinn, Murphy & Neil, the defendants, and filed for them a general demurrer and a general denial. The appellants, in their answer, alleged that this appearance for the defendants was made at the instance of James Neil alone, and that the firm of Quinn, Murphy & Neil had previously been dissolved ; wherefore they alleged that the appearance for Quinn and Murphy was unauthorized.

The opinion of the court discloses such other facts as are material to the case.

*John H. Reagan*, for the appellants.

I. The first and second of the errors assigned by appellants are as follows :

" *First*. The court erred in taking and retaining jurisdiction " in the original case of James Neil & Co. against Quinn, Mur- " phy & Neil, and in rendering the judgment contained in the " record of this case against them for fifteen thousand four " hundred and eighty-nine dollars and thirty cents, on the 3d " of September, 1872.

" *Second*. The court erred in taking and retaining jurisdic- " tion in the matter of the garnishment of appellants, sued out " by appellees in said case, and in rendering the several judg- " ments contained in the record against them."

These two alleged errors will be examined together.

The question as to the jurisdiction of the court is raised by the plea in abatement filed by appellants, and by the pleas of

appellants, to which the attention of this court is respectfully called.

These pleas were put in issue by appellees by their general and special exceptions, and by their general exception; and these exceptions were sustained by the court, which rulings were excepted to by appellants.

These pleadings, rulings, and exceptions present for the determination of this court the question of jurisdiction, and appellees rely mainly upon the want of jurisdiction in the court below for the reversal of the judgment in this case, and expect to show that the judgment ought to be reversed and the cause dismissed by this court.

This court would doubtless have looked into the question of jurisdiction on mere suggestion, and in the absence of pleas, rulings, and exceptions, fully raising the question, as is done in this case.

1st. The court will look into the question of jurisdiction at any stage of the proceedings. (See Rhode Island v. Massachusetts, 12 Peters, 718; Grignon's Lessee v. Astor et al., 2 Howard U. S., 338.)

2d. A judgment cannot be rendered against a garnishee on a void judgment. (Ward v. Haggerty; 25 Texas, 144.)

3d. Where the proceedings show that there is no legal service on the defendants, the judgment is void. (Edrington v. Allsbrooks, 21 Texas, 186.) And the same case, that judgment against a garnishee is dependent on the judgment against the defendant or original debtor; that being void, the other falls with it.

II. In appellants' plea in abatement, and their first plea in bar, in the answer of John R. Boyle, it is alleged that the judgment rendered for appellees against appellants in this case is fraudulent, null, and void, and furnishes no foundation on which to render judgment against appellants, because James Neil, of the firm of James Neil & Co., plaintiffs in this suit, is the same person who is sued as a defendant in this suit, and as a member of the firm of Quinn, Murphy & Neil,

by the name of Peter H. Quinn, Francis Murphy, and James Neil; and that he cannot be both plaintiff and defendant in the same suit, and could not lawfully obtain a judgment against himself for his own benefit, nor for a firm of which he is a member against a firm of which he is a member, in one and the same suit; and that he was and is legally interested on both sides of the case; wherefore the court has no jurisdiction of the case.

This plea is to be taken as true for the purpose of determining the validity of the exceptions to it.

Where one person is a partner of two firms, he cannot sue either of the firms of which he is a member. (Chitty's Pleadings, 40, 41, and authorities there cited; Story's Equity Jurisprudence, Section 679; Parsons' Mercantile Law, 183; Parsons' Law of Business Men, 158.) It is not denied that in a proper mode of procedure, as in the nature of a bill in equity, the mutual rights and liabilities of two firms, having one or more of the same persons in each, might be litigated; but none of the facts or circumstances are averred by appellees in this case which would distinguish this from an ordinary action at law. And while the jurisdiction of our courts is without regard to any distinction between law and equity, still, by numerous decisions, it is held that where what would be a legal right, in a country where the distinctions between proceeding at law and in equity are preserved, is to be asserted, it is to be done by such averments, omitting common law forms and technicalities, as would be employed in a court of law; and equitable rights by such averments as show the equitable qualities of his title. This case stands as a mere action at law, and, it is submitted, is clearly within the principle above laid down.

III. The fifth and sixth errors assigned are as to the ruling of the court sustaining the exceptions of appellees to the plea in abatement, filed by appellants, and in sustaining the exception of appellees to the pleas of appellants.

In the third one of those pleas it is shown that appellees, for the purpose of fraudulently giving the court jurisdiction of

the case, averred in their original petition that the defendants, "Peter H. Quinn, Francis Murphy, and James Neil, late tem- "porary residents of said Anderson county, Texas, * * * are "now," (that is, at the date of the filing of their said origi- nal petition, on, to wit, the 26th day of February, 1872,) "absent from the State and their residence unknown;" when in fact, James Neil, who is both a party plaintiff and defendant in said suit, was not then absent from the State of Texas, but was residing in the city of Austin in said State; and when in fact the residence of said James Neil, one of the plaintiffs, was then known to himself.

In the fourth of said pleas it is shown that Page McDannell, one of the members of the firm of James Neil & Co., and one of the plaintiffs in the case, in order to secure the writ of attachment against the property of appellants, made an affida- vit in writing before the clerk of the District Court on said 26th of February, 1872, in which he swore "that the said "Peter H. Quinn, Francis Murphy and James Neil have aban- "doned the country," meaning that they had, at the time of the making of said affidavit, abandoned the State of Texas, when in truth said James Neil had not abandoned the country, but was then at the city of Austin, in the State of Texas. Where- fore it is alleged that said affidavit was false, and was falsely made to secure the issuance of the writ of attachment, and give the court jurisdiction over the property of appellants, and to authorize the issuance of the writs of garnishment against them. And it is shown that by virtue of said affidavit the clerk did issue the attachment, and that said affidavit was fraud- ulent and gave the court no jurisdiction.

These pleas are to be taken as true in considering the demur- rer to them. There is only a general demurrer to them; no special exceptions. It cannot be necessary to cite authorities to show that if the averments in these pleas are true, appel- lants had a right to show it. And that if it had been shown by proof that the plaintiffs had falsely and fraudulently averred that the defendants "were absent from the State, and their

" residence unknown ; " and that Page McDannell had falsely and fraudulently sworn that " Peter H. Quinn, Francis Murphy • " and James Neil have abandoned the country," for the purpose of obtaining, by these false and fraudulent means, jurisdiction of the case, and obtaining the issuance of the attachment and of the writs of garnishment; that the writs of attachment and garnishment so issued were fraudulent and void.

If James Neil, one of the defendants, was living in Austin, he, being also one of the plaintiffs, did know his own residence, and did not have a legal right to the writ of attachment against himself and his co-defendants, because they were non-residents of the State. And the averment by him of his own non-residence, when he was a resident of the State, to obtain the writ of attachment, is clear and flagrant fraud; and the attachment is a nullity. (Paschal's Digest, Article 142.)

IV. Under the fifth of said pleas it is shown that there is no affidavit of the truth of the matter set forth in the petition of plaintiffs; and therefore no authority for the issuance of the attachment. (Paschal's Digest, Article 138.)

It may be contended that this was immaterial, as the defendants in the court below appeared by their attorneys and answered. To this point, if made, we reply that the appearance was by the authority of Neil alone, and that one of the pleas of appellants, which was stricken out in the court below on demurrer, was that the partnership between Quinn, Murphy & Neil had been dissolved, and that Neil had no authority to make that appearance, and that his attempt to do so was fraudulent, and gave the court no jurisdiction over them. If on this ground the court had no jurisdiction *in personam*, then, on the ground above stated, that the writ of attachment was improperly issued and of no legal force, there was no jurisdiction *in* · *rem ;* and no judgment could be legally rendered in the case. (Schrimpf *v.* McCardle, 13 Texas, 370; Morgan *v.* Johnson, 15 Texas, 569; Primrose *v.* Roden, 14 Texas, 3 ; Wright *v.* Ragland, 18 Texas, 289 ; Barbee *v.* Holder, 24 Texas, 226 ;

and Edwards *v.* Davis, 3 Texas, 321.)  And it has been the uniform practice of this court to require a strict, exact, and literal compliance with the requirements of the statute.  (Sloo *v.* Powell, Dallas, 469 ; Sydnor *v.* Chambers, Id., 604; Wooster *v.* McGee, 1 Texas, 17; and Edwards *v.* Davis, 3 Texas, 321.)

V.  By the sixth of said pleas, it is shown that the attachment bond does not contain a description of the parties to the suit, or show in what suit it was given, and that it was not approved by the clerk, and that neither the recitals in the bond or the signatures thereto show that it was signed by the plaintiffs in said suit, James Neil & Co., or by their agent, or by any person authorized by them.

The bond is insufficient.  It does not describe the parties to the suit, or show in what case it was given, as required by Article 143, Paschal's Digest, and by the case of Schrimpf *v.* McCardle, 13 Texas, 371.  It describes " Page McDannell " as principal, and the record shows that James Neil & Co. ought to have been the principals in the bond.  It shows that McDannell as principal, and McDowell and McClellan as securities, are bound to pay to Quinn, Murphy & Neil thirty-one thousand dollars, without showing in what case or suit they are so bound, upon condition that James Neil & Co. will prosecute their suit with effect—without showing what suit, or against whom, or in what court even.  This bond is not identified with the case by showing that there was a suit pending, or where pending, or between whom.  And it is so defective that if it had been forfeited, no suit could have been brought on it; nor, if brought, could any judgment have been rendered on it.

Neither the recitals in the bond, or the signatures thereto, show that it was signed by the plaintiffs, or by their agent, or by any person by their authority.  In such a case the bond is void, and no attachment can issue on it.  (4 Smedes & Marshall's R., 683 ; Drake on Attachments, Section 696 ; 13 Texas, 671.)

And an attachment taken out without bond or affidavit is

void; and, though the garnishee summoned · under such at-
tachment has answered, and though judgment has been ren-
dered against him on his answer, and also against the defend-
ant in the attachment, the judgment is erroneous, and will be
set aside.    (2 Smedes & Marshall's R., 260.)

A judgment rendered in such a case may be impeached col-
laterally, or otherwise, and forms no bar to a recovery sought
in opposition to it, nor any foundation for a title claimed under
it.    (Drake on Attachments, Sections 449 and 691; defense
to be plead by garnishee, Id., Sections 692 and 696; and for
jurisdiction, see Id., Sections 83, 84, and 88.)

VI.    In the seventh of said pleas (R., page 49), it is shown
that James Neil & Co. averred, in their original petition, that
they were citizens of the State of Iowa, and that they averred
that Quinn, Murphy & Neil were non-residents of the State of
Texas, and that they did not show, by their petition, or any
amendment thereto, that the defendants had any property
within the State.

If both plaintiffs and defendants are non-residents of the
State, in order to give the court jurisdiction, the plaintiff must
allege that the defendant has property or effects within the
State.    (McMillan v. Guest, 6 Texas, 279; Ward v. Lathrop,
11 Texas, 290, and same case in 4 Texas, 180.)

The courts of this State have no jurisdiction of an original
attachment when neither the plaintiffs nor defendants are citi-
zens of this State, and can render no judgment against a gar-
nishee summoned upon such an attachment.    (6 Yerger's R.,
473; Drake on Attachments, Section 696.)

If it be said that in the prayer of the petition of plaintiffs
they pray for the issuance of an attachment to the sheriff, com-
manding him to seize the property of the defendants, or so much
thereof, if to be found in his county, as may be sufficient to
satisfy the demand of plaintiffs, I reply that, under Paschal's
Digest, Article 1427, the petition must show " a full and clear
" statement of the cause of action, and such other allegations,
" pertinent to the cause, as he may deem necessary to sustain

" the suit." And it must also contain " a full statement of the " nature of the relief he requests of the court ;" this latter being the direction as to the prayer of the petition, as contra- distinguished from the portion of the section which refers to the averments to be made.

The material, issuable, substantive facts, should be stated by proper legal averment. (Guffy v. Mosely, 21 Texas, 410 ; Van Alstyne v. Bertrand, 15 Texas, 179 ; Wells v. Fairbanks, 5 Texas, 585 ; Oliver v. Chapman, 15 Texas, 403.)

The prayer must be consistent with the case made by the petition. (Denison v. League, 16 Texas, 407 ; Hogan v. Kell- ner, 13 Texas, 399 ; McDaniel v. Mann, 25 Texas, 102.)

Facts not averred though proved cannot be the basis of a decree. (Chrisman v. Miller, 15 Texas, 160 ; Hall v. Jackson, 3 Texas, 305.) The only reference to property is in the prayer of the petition, and is conditional, not positive.

In all the works on pleading, whether at law or in equity, as in our statute, the distinction is clearly kept in view between the averments in which the cause of action are set forth, and the prayer for the relief sought, which is to be predicated on, and must conform to those averments.

And under this plea, as well as under the others, it is clear that the ruling of the court sustaining the demurrer to it is wrong and must be reversed. It is also clear under this and the two former pleas, that the court had no jurisdiction of the case, and that the judgment on the demurrer should be re- versed and the cause dismissed ; because the bond, the writ of attachment, the writs of garnishment, the judgment of James Neil & Co. against Quinn, Murphy & Neil, and their judg- ment against Douglass, Brown, Reynolds & Co., are all utterly void.

*T. J. Word* and *A. M. Jackson,* for the appellees. The appellants are garnishees, and the judgment appealed from was rendered against them in that capacity. We fully concede their right to see that the judgment against the original de-

fendants, Quinn, Murphy & Neil, was a valid judgment. That concession, however, comprises the full measure of their rights, so far as they are involved in the present question; and it will need no lengthy discussion to demonstrate that they are far transcending their rights in the attempt to impugn the judgment in this cause.

The court will observe that the sole substantial allegation upon which this attempt is based, is, that the plaintiff, Neil, is the same person as Neil, one of the original defendants, and this is coupled with sundry objections to the attachment papers. Assuming then, for argument's sake, the truth of that allegation, the simple inquiry is, whether it follows, as a legal or logical consequence, that the District Court had no jurisdiction of the case, or that its judgment was fraudulent and void. Counsel for the appellants have the affirmative of that proposition, while we maintain the negative.

In England and in those of the American States wherein the distinctive jurisdictions between law and equity subsist, it is doubtless well established that when the same person is a partner of two different firms, neither of the firms can maintain a suit against the other in a court of law. But opposing counsel very properly admit that courts of equity can and do entertain such suits.

This admission is of itself fatal to the position of the appellants. " District Courts," says the Constitution of this State (Article 5, Section 7), " shall have original jurisdiction * * * without regard to any distinction between law and equity." Chief Justice Hemphill, therefore, was well warranted in laying it down, in Smith v. Clopton (4 Texas, 114), that if a party have rights cognizable by either a court of law or a court of equity, he has a case within the jurisdiction of the courts of this State; and equally well warranted in adding that the rule that courts of equity will interfere only where the party is remediless at law, has but little application in this State. Smith v. Clopton, just cited, was a suit which Clopton could not have maintained in a " court of law " where the distinc-

tions between law and equity are maintained ; but this court held that as our courts are precluded from regarding the distinctions between law and equity, his suit was well brought, though it is obvious that he alleged no other "equity" than the ownership of the instrument sued on.

This case of Smith v. Clopton is therefore a direct authority that the question raised by opposing counsel is not a question of jurisdiction ; for if the question had been one of jurisdiction, then that case must inevitably have been reversed and dismissed, and not affirmed, as it was.

The question really raised in the present case is simply a question of pleading, and not of jurisdiction.  Considered as a mere question of pleading, it is wholly immaterial to us whether the views of opposing counsel are right or wrong.  The appellants were not parties to the suit of the appellees against Quinn, Murphy & Neil, nor to the judgment rendered in that suit. Whether the pleadings in that suit were sufficient or not, is no concern of the appellants.  Even if the pleadings were insufficient, it by no means follows that the judgment rendered in that suit was void.  Quinn, Murphy & Neil, the defendants to that suit, might, at a proper stage in its progress, have questioned their sufficiency ; but when they raised no such question, and judgment was rendered against them, with what pretense of right or propriety can these appellants be heard to raise it ?  They are garnishees.  If the judgment against their creditor was a valid and subsisting judgment, that was everything it concerned them to know.  Even though every step in the procurement of that judgment had been irregular; though every pleading had been palpably insufficient ; though that judgment itself had been obviously erroneous; yet, if the judgment was valid, then the only "material fact in issue," as Justice Wheeler said in Adkins v. Watson, 12 Texas, 200, "was as to the indebtedness" of the garnishees to the defendants.

Now, even though Neil was partner in each of the two firms, it cannot be questioned that an indebtedness of one to the other was cognizable by the District Court.  To adjudicate upon

such an indebtedness was within the power of the court. The subject-matter of this suit, then, was within the jurisdiction of the court.

What more was necessary to the validity of its judgment in favor of the appellees against Quinn, Murphy & Neil, the defendants in the attachment? Merely that jurisdiction of their persons was also acquired; and in this case the jurisdiction was acquired both by the attachment of their property and by their appearance in defense to this suit.

Now, we submit with perfect confidence, that with the record of the court showing the service *in rem* and the appearance of the defendants, and further showing the rendition of the judgment against the defendants, every inquiry which garnishees could make was fully answered. Nothing remained for them to do but to disclose their indebtedness, etc. The record of the court exhibited on its face a valid judgment, ample to protect them as garnishees. Could they be permitted to impeach that record, or to aver against its verity? The court below, by sustaining the exceptions to what they call their "plea in abatement," and their "pleas in bar," held that they could not be permitted to do so, and there is nothing in the whole science of law more certain than that this ruling was correct.

In furtherance of their effort to impeach and falsify the record, their so-called pleas attempt to traverse the truth of the affidavit for the attachment; and this, too, after the rendition of the judgment against their creditors, the defendants in the attachment. Why, even those defendants could not do that, after the rendition of the judgment; their remedy would have been on the attachment bond, for the wrongful suing out of the writ. Those defendants (Quinn, Murphy & Neil) were not only brought into court by attachment of their property, but entered an appearance and filed a defense to the merits, taking no exceptions either to the attachment proceedings or to the pleadings of the plaintiffs. Drake lays it down as clear law that a garnishee cannot be permitted " to defeat the plaintiff's " action by assuming a ground which the defendant either did

" not consider available to himself, or chose to waive." (Drake
on Attachment, Section 713.) That is exactly what these
appellants are striving to do ; and this after the rendition of the
judgment against the defendants, for the court will see that the
judgment against the defendants was rendered on the 3d of
September, and that the so-called pleas in abatement and in bar
were all filed on subsequent days. It is perfectly clear that the
defendants themselves, having appeared and answered to the
merits, could not, after the rendition of judgment against them,
have been heard to impeach that judgment in the manner
attempted by these garnishees. Surely, then, it is obvious that
the court below was perfectly right in denying such a right to
these latter.

Even if the attachment proceedings had been subject to
abatement, they stood under our statute until " abated on
" motion of the defendant." (Paschal's Digest, Article 147.)
If the defendants make no such motion, they stand forever
against all the world. The garnishees are in no degree respon-
sible for the regularity of those proceedings; and the " only
" State," says Drake, " in which such an obligation has been
" imposed on the garnishees is Mississippi " (Drake, Sections 736,
737); and even this solitary exception is imputed by that
author to the peremptory provisions of the statute of that State,
which, in this particular, differs pointedly from our own.
Counsel for the appellants cites this exceptional case (4 Smedes
& Marshall, 683) as an authority to be followed by this court,
instead of as an anomaly to be avoided.

Again : even if the preliminary proceedings for the attach-
ment had been absolutely void, of what signification or conse-
quence would that be, when the record shows that the defend-
ants appeared to the suit and pleaded to the merits ? Nor has
any one of them to this day questioned the judgment rendered
against them. With ample and plenary jurisdiction over the
persons of the defendants, thus exhibited by the record of the
District Court, it would have been strange indeed if that tribu-
nal had sustained the officious efforts of the garnishees to

impeach its judgment. Not even in the exceptional State of Mississippi could a precedent be found to countenance such an attempt, after the defendants had appeared and submitted to the jurisdiction.

We submit, therefore, with perfect confidence, that the court below had jurisdiction, and that its judgment in favor of appellees against Quinn, Murphy & Neil, defendants in the attachment, was and is valid, in the fullest sense, and will afford perfect protection to the appellants against any future claim in behalf of those defendants, or any of them.

Rendered, as that judgment was, by a court of general and plenary jurisdiction, on a subject-matter within its cognizance, and with the defendants in court by appearance and plea, as well as by attachment of their property—what possible doubt can be entertained of the validity of that judgment, so long as it stands unreversed, and not even so much as questioned by any of the parties against whom it was rendered? And the validity of the judgment, as between the plaintiffs and the defendants, being so apparent on the face of the record, we might well hold ourselves excused from noticing in detail the comments of opposing counsel upon the fifth and sixth assignments. In justice to the plaintiffs and their case, however, we will briefly notice some of the matters alleged in the so-called pleas of the appellants, and discussed by their counsel. The hue and cry of fraud raised in those pleas and reiterated in the opposing counsel's brief, amounts to nothing when the facts disclosed by the record are fairly understood. The suit of the appellees against Quinn, Murphy & Neil, was instituted by McDannell, one of the plaintiffs. It is not averred by the appellants, nor even suggested by their counsel, that he brought the suit in collusion with, or even with the knowledge of Neil. The latter had no connection whatever with the bringing of the suit, or the suing out of the attachment, and it is not alleged by the pleas that he had; but the able counsel for the appellants treats the case in such a manner as to leave the impression that it was so alleged. With this distinctly understood, it is clear that the

allegations of the appellants, if true, have no legal significance. If Neil, for instance, was at Austin when the attachment was sued out by McDannell, that fact would not make the attachment fraudulent, nor at all vitiate or affect the jurisdiction of the court acquired by the attachment over the property and effects of Quinn and Murphy, whether individual or partnership. That Quinn and Murphy had abandoned the country, is not denied by the appellants themselves, and their amenability to the attachment is not questioned.    With respect to Neil, even opposing counsel does not question the jurisdiction over him, since he (as alleged by the appellants) caused the appearance and answer to be entered in the case.    That property of these defendants was seized by the sheriff, by virtue of the attachment, is fully evidenced by the record.    It was not necessary, however, that the affidavit for the attachment should allege that the defendants had property within the State.    (Seawell v. Lowery, 16 Texas, 47; Thompson v. Allen, 4 Stewart & Porter, 184.)    By the express provisions of our statute, the plaintiffs were entitled to the writ upon making "affidavit in writing, " stating that the defendant is justly indebted to them, and the " amount of the demand; also    *    *    *    *    that he has aban- " doned the country"—and without any mention of his property.    (Paschal's Digest, Article 142.)    If the plaintiffs' petition only referred to the property of the defendants, and did not make a sufficiently "full and clear statement" respecting it, surely that is not a matter either of fraud or of jurisdiction, as opposing counsel seems to regard it; but is a mere defect of pleading, cured by verdict, and never available by any one but the defendants.    So that if the facts were in accordance with the allegations of the appellants, and with the comments of their counsel, no such consequences as fraud and want of jurisdiction would follow from them.

It is also argued by counsel that the appearance was unauthorized and invalid as to Quinn and Murphy, because entered by direction of Neil.    Now, if the suit had been brought by Neil, or at his instance, there might be plausibility in this position.

But it is not so pretended even; and why did not Neil have authority to direct an answer to be filed and such a defense made as would limit the recovery of the plaintiffs to the amount due them? This was not attempting to make a contract for the firm after its dissolution. The cause of action was a firm debt; was it necessary that all of the former partners should personally retain an attorney before a defense could be filed? Any one of the partners would be liable for the whole of the amount recovered. Is it possible, then, that he could not interpose a defense without the concurrence of all? Counsel seems to think so, but we submit that it is absurd. He cites no authority for such a position. On the contrary, we insist that as to the unsettled business of the firm, the partnership still subsisted for the purpose of liquidation; and that in any suit for a firm liability, any one of the partners was legally authorized to enter an appearance and make defense for all. The general principles of law sustain his power to do so; opposing counsel cites no authority to the contrary, and we have searched in vain for any adjudicated case which supports the position taken on this point in appellants' brief.

The eleventh and twelfth assignments are equally untenable. To controvert the answer of a garnishee, the plaintiff need swear to nothing more than that he "believes it to be incorrect." This is by the express provision of the statute, Article 161, Paschal's Digest.

The thirteenth and fourteenth assignments impugn the charge of the court, but an inspection of the charge itself will fully vindicate it. The judge merely reminded the jury of the statements of the garnishee's answer on the subject of their indebtedness. This part, as well as the whole of the charge, gives the fullest possible weight and credit to the answer; and in fact overstepped the law in that direction. But this was to the prejudice of the appellees, and not to that of the appellants.

In no possible sense was there any comment on the weight of the evidence to the prejudice of the appellants. A mere recapitulation of the statements of their own answer, and con-

ceding to them every credit that possibly could be ascribed to them, is surely not such comment.

There is no pretense whatever that the judgment rendered against them is in excess of their indebtedness to the defendants. This record shows that they got the benefit of every credit, payment, and offset which they had the slightest right to demand. And as the judgment against the defendants will always protect them against any claim of the defendants, how can these appellants have any cause to complain of the judgment?

WALKER, J. The appellants were garnished in an action by James Neil & Co., against Quinn, Murphy & Neil. The plaintiffs below sued out an attachment, and V. M. Blanding was also served with a writ of garnishment. The record is silent as to what became of the writ served on Blanding, and it will not be material to notice him further in this opinion. J. J. Brown, one of the firm, answered for his firm, which answer was controverted by the appellees.

At the Fall Term, 1872, the appellees recovered judgment for upwards of fourteen thousand dollars against Quinn, Murphy & Neil. At a subsequent day of the term, the appellants filed a plea in abatement, and, at a still subsequent day, exceptions to the affidavit and pleas, controverting Brown's answer, and on the same day the appellants filed the answer of Brown, of the firm of Douglass, Brown, Reynolds & Co.

The answer of Boyle was controverted by the affidavit of Page McDannell, and also a plea controverting Boyle's answer.

Appellees filed exceptions to the plea in abatement. These pleadings were followed by exceptions on the part of appellants to the affidavit and pleas which controverted Boyle's answer.

The pleadings being thus made up, the appellants moved for a continuance of the cause on the affidavit of Boyle, which motion was overruled. Then follows in the record an agree-

ment of parties to consider as evidence in the cause certain judgments therein set forth.

The pleadings in the case show how vigorously the contest has been waged, and now we are to consider numerous exceptions urged by garnishees as errors to the rulings of the District Court.

Precisely how far these appellants may be heard in this court objecting to a judgment of which the defendants below do not complain, is a matter not easily settled upon the law and the practice; but it does appear to us that the province of the appellants goes little, if any, farther than to see that the judgment against the defendants below is correctly rendered, and that, if they should pay. it, or any part of it, it would be a protection to them, in the amount so paid, against any subsequent claim which might be made against them by the defendants in the judgment; and further, that the amount of their own indebtedness to the defendants is correctly ascertained, and that the judgment of the court against them is in accordance with law. Believing this to be the correct rule of law, we might save ourselves the labor of noticing *seriatim* the assignments of error made by the appellants.

Mr. Drake, in his learned work on Attachments, with a full acquaintance of the authorities touching this subject, lays down the rule that the garnishee will not be permitted to defeat the plaintiff's action on grounds which the defendant did not assume, or chose to waive. (See Drake on Attachment, Section 713.)

We cannot admit the right of the appellants to have this judgment set aside on the ground that James Neil was a partner in each of the firms sued and being sued. It is true that in actions at law a party may not be allowed to sue himself, but in courts of equity, partnership firms thus constituted have always been permitted to have their rights adjudicated, the law having regard rather to the artificial person than to the individual members composing the firm, which constitutes the artificial personality. The objection made on this account, in

those countries and States where the law and equity jurisdiction are kept separate, each contending for its own province, would have great force ; but in our State, with its blended jurisdiction, the courts are often called on to consider, even in the same case, questions both of law and equity. Under our Constitution, Article 5, Section 7, the District Courts have original jurisdiction, without regard to any distinction between law and equity, and this jurisdiction comes to us, unabridged, by appeal. This question was early settled in Texas by the case of Smith v. Clopton, 4 Texas, 114. If a party has rights cognizable either in a court of law or equity, he has a case within the jurisdiction of our courts. This was a case which serves well to illustrate the rule. Clopton could not have maintained his action at law in any State where the law and equity jurisdictions are separated.

We think any interference on the part of the appellants in the suit of appellees against Quinn, Murphy & Neil, other than that already indicated in this opinion, would not be authorized by any correct system of practice, unless it were under a statute such as that of Mississippi, referred to in Drake on Attachment, Sections 736 and 737 ; under which statute the case in 4 Smedes & Marshall, 683, was doubtless adjudicated. In Atkins v. Watson, 12 Texas, 200, Mr. Justice Wheeler clearly lays down the rule which we have adopted for our government on this branch of the case. It matters not, then, if Neil was a partner in each of the firms which constituted the original parties to the action ; it was clearly within the province of a Texas court to entertain jurisdiction and adjudicate all matters in difference, properly brought to the notice of the court.

We are of the opinion that the District Court acquired jurisdiction both of the persons and property of the defendants, and that, so far as this question of jurisdiction is concerned, the judgment against Quinn, Murphy & Neil was regular and valid. There is an answer filed by Smith and Glenn, attorneys for Quinn, Murphy & Neil, found in the record, which gave the court jurisdiction of the person of the

defendants, and the levying of the attachment upon their property brought it likewise within the jurisdiction of the court.

We think the court below properly sustained the exceptions to the appellant's pleas in abatement and in bar, which was equivalent to saying what we have already said in this opinion as to the province of garnishees in attempting to defend for the defendants below. It was certainly a bold move, and one the correctness of which we cannot recognize, for the appellants, after judgment against their creditors, to traverse and question the truth of the affidavit for the attachment. The defendants themselves would not be allowed to do this, had they felt aggrieved. Their remedy must have been on the attachment bond. They had appeared and answered, and judgment has gone against them, and they do not even appeal to this court. The appeal is prosecuted by the garnishees. What would they have us do? Shield them from their indebtedness to their creditors? This they really do not deny, but rather contest this case for their creditors, with the appellees, and we cannot see that their creditors are asking them to do this.

Had the attachment been void or subject to any legal exceptions, the defendants might have quashed it on motion.

But it is insisted that the court erred in overruling the motion for a continuance for want of the testimony of Quinn, Murphy, and House. The appellants suffered nothing for want of the testimony of House; they got the full benefit of the credits which it was proposed to prove by him. As to the testimony of Quinn and Murphy, this was disclosed to the court by the affidavit. The court had a perfect right to determine the relevancy and materiality of the evidence thus proposed, and if the evidence was found not to be admissible or material, then the motion for a continuance was properly overruled. (Williams v. Talbot, 27 Texas, 159.) And the court had a right to look to the pleadings to determine whether the *allegata* required or permitted the introduction of the evidence proposed. (Fowler v. Buckner, 23 Texas, 86; Hardison v. Hooker, 25 Texas, 93.)

We are of the opinion that the matters proposed to be proved were inadmissible in support of any legal issue made in the case. The motion for a continuance was made by the garnishees after judgment had gone against the defendants. The appellants have no right to impeach the judgment against their creditors, and the motion for continuance was properly overruled on this ground alone. But it is very doubtful, had the evidence been admissible and pertinent, whether the appellants were within the rule of due diligence.

What we have said already disposes of most of the material objections urged against the proceedings in the court below. It may be a sufficient answer to what is said by the learned counsel in support of the 5th and 6th assignments of error, that we refer to what has already been said in this opinion, that it was not in the province of the appellants to assume the defense of the action for their creditors. There is a noticeable fact that, though complaint is made here against the action, for the reason that Neil was connected with both the firms, that no charge of fraud or collusion is made in the pleadings or arguments, nor does it appear that Neil has actively concerned himself in the case at any stage of the proceedings.

The objections made to the charge of the court we cannot regard as tenable. The appellants could not have suffered by any inaccuracies supposed to exist in the charge.

It becomes our duty, regarding the law in the light we have presented it, to affirm the judgment in this case, which is accordingly done.

                                                    Affirmed.