JOHN ELLIS v. M. M. SINGLETARY ET AL.

1. VENDOR'S LIEN.—The substitution of a new note signed by another party for a note secured by the vendor's lien, will not of itself discharge such lien.

2. SAME—ADDITIONAL SECURITY.—Nor will the fact that such substituted note is secured by the personal obligation of other persons affect the vendor's lien when there is an express agreement that the lien shall be retained.

3. SAME.—Taking additional personal security is a fact from which the abandonment of the vendor's lien may be inferred; but such fact may be explained; and the release of the lien is a question of fact depending upon the evidence establishing the intention of the parties to rely upon the land as security, or as one of the securities, for the unpaid purchase-money.

4. PRIORITY OF RIGHT TO ENFORCE VENDOR'S LIEN.—The holder of several purchase-money notes secured by the vendor's lien upon a tract of land cannot defeat the enforcement of such lien by the holder of other of such notes with like security, by purchasing the legal title to the land on which the lien exists: nor will such purchaser be entitled to a decree ordering sale of the land with a *pro rata* division of the proceeds of such sale unless such relief be asked by appropriate pleadings. It is not error to refuse a charge suggesting such relief when the defendant had no affirmative pleadings as a basis for such charge or relief.

5. BONA FIDE PURCHASER.—While a judgment creditor may be a *bona fide* purchaser, yet if he reconvey to the judgment debtor, such debtor takes the estate subject to all trusts affecting his conscience prior to the execution sale.

6. PLEADING.—Each party has a substantial right to be confronted with pleadings so shaped as to give him reasonable notice of what is designed by them; and where facts are plead in defense, without any indication that affirmative action, as by cross bill, was desired upon such facts, the plaintiff cannot be expected to defend against such facts as the basis of a cross bill; nor can the party so pleading his defense, after the evidence is closed by charge to the jury, change the nature of his case from that fairly indicated by his pleadings.

APPEAL from San Jacinto. Tried below before Hon. J. R. Burnett.

James Hogue purchased from Taylor and Davis a tract of land in San Jacinto county, (then Polk county,) on Trinity

river, known as "the Cedar Landing Tract," containing four hundred and fifty acres. Hogue sold the land to the appellant, John Ellis, before the title had been made to him, and procured the deed from Taylor and Davis direct to Ellis. Ellis sold to Kirksey, and received in part payment a note for $1,250, carrying with it a vendor's lien upon the land. This note Ellis transferred to Hogue, and Hogue transferred it to Robinson, Singletary & Co., of Huntsville. It was payable to bearer, and Ellis did not indorse it. When Hogue transferred it to Robinson, Singletary & Co., he indorsed it with the expressed understanding that the vendor's lien was not waived or lost thereby. Kirksey afterwards sold the land to Holliman, and substituted Holliman's notes for his (Kirksey's) notes in Ellis's hands, and by a comity of arrangement between Kirksey, Holliman, and Robinson, Singletary & Co., the note of $1,250, which had been passed to Robinson, Singletary & Co. was taken up and substituted by one of the purchase-money notes which passed to Kirksey from Holliman in the trade between them. This note is the instrument upon which this suit was brought, and reads as follows:

"$1,312. On demand we or either of us promise to pay to order of Robinson, Singletary & Co., the sum of thirteen hundred and twelve dollars, for value received, drawing ten per cent. interest from date; this note given as part of payment Cedar Bluff land, this the first of March, 1862.

(Signed)      Howell Holliman,<br>
    H. H. Holliman,<br>
W. H. Clark,<br>
H. B. Holliman."

This note was carried by Howell Holliman to Robinson, Singletary & Co., with blank payees. Robinson, Singletary & Co. agreed to accept the note in lieu of the Kirksey note, provided Holliman (the principal) would insert a clause which would show that it was one of the purchase-money notes, and would carry with it a vendor's lien upon the land, and with the express understanding that the taking of per-

sonal security would not waive the lien. In accordance therewith the clause, "this note given as part of payment Cedar Bluff land," was inserted by the drawer (Holliman.) Holliman afterwards conveyed the land to W. T. Pollard, and he conveyed it back to John Ellis, appellant. At a sheriff's sale in Polk county, T. W. Billingsley, the real plaintiff in execution, bought the land. Billingsley compromised with Ellis, and agreed to reconvey the land to him for a certain price. Ellis made an arrangement with Jagers and Byrd, by which they were to pay the money for him, and have the title made to them as a security for the money advanced. When Ellis paid back the money to Jagers and Byrd, they reconveyed the land by quit-claim deed to Ellis, and he is now the holder and claimant of the land.

Suit was instituted in the District Court of San Jacinto county by appellee against W. H. Clark, one of the drawers of the note, (the others being insolvent,) and against Ellis, the holder and claimant of the land. Clark plead in set-off a note given by Robinson, Singletary & Co. for $211.94, in favor of James Hogue.

Defendant Ellis also plead special matter in bar, in substance representing as follows: That he, Ellis, was the original vendee of Davis and. Taylor; that having bought said land from them, and paid them for same, they conveyed it to him by deed dated February 25, 1854; that on the 27th day of September, 1860, he sold and conveyed said land to Drury Kirksey for $6,750, and in part payment for said consideration, Kirksey executed to him, Ellis, his four certain promissory notes, for $1,312.50 each; that in due course of business, for value received, (but not in any purchase-money of land) transferred one of said Kirksey's notes to James Hogue; that said Hogue transferred said note, by indorsement, to Robinson, Singletary & Co.; that on the 5th of March, 1861, said Kirksey sold and conveyed, by deed of that date, the same land to Howell Holliman, for the same price which he, Kirksey, had purchased at, of Ellis, and in part payment

thereof, he (Holliman) executed to Ellis three promissory notes, for $1,312.50 each, the same being accepted by Ellis, for and in lieu of a like number of said Kirksey's notes, then held by Ellis, by arrangement and agreement of the parties, Holliman, Kirksey, and Ellis; that on the 4th of June, 1863, Ellis being then in the army, Holliman sold and conveyed said land, by deed of that date, to W. T. Pollard, for $10,000; that on leaving for the army, he (Ellis) deposited said three Holliman notes (which on their face specified they were given for the land) with his brother, who, without authority, collected one of them in Confederate money. On his return, after the war, Ellis received the other two notes, each for the sum of $1,312.50, dated March 5, 1861, one falling due January 1, 1864, and the other January 1, 1865, which he now holds, in no wise satisfied or paid, and which being set up in and made a part of his answer, by their recitals showing the fact, he claims and avers operates in his hands a vendor's lien, and a superior equity to that of the plaintiff, if any is shown by his petition; that, furthermore, on the 6th day of September, 1866, he, Ellis, purchased again said land of said Pollard, for $300, and on that day received a conveyance of same; that afterwards, on the 19th day of June, 1868, said land was purchased by T. W. Billingsley, for $472, at sheriff's sale, under an execution issued upon a judgment rendered in the County Court of Polk county, (San Jacinto being then part thereof,) in favor of James Hogue against said Ellis; that afterwards, in the year 1870, said Billingsley, for value received, sold and conveyed said land by warranty deed to Jagers, Byrd & Co., who then held a mortgage on same, executed by Ellis to them; that afterwards said Jagers, Byrd & Co., for a valuable consideration, conveyed said land to said Ellis; that, at the dates of the respective sales and conveyances by the sheriff to Billingsley, Billingsley to J., B. & Co., and J., B. & Co. to Ellis, it was averred and claimed that he and they each had no notice of any lien whatever, by reason of the note sued on or facts stated in plaintiff's petition, and claimed

the protection of an innocent purchaser for value without notice. The answer having asserted the lien of the notes (executed by Holliman, in lieu of the original purchase-money notes of Kirksey) made part of it, and asked protection of same and the rights in equity of Ellis springing therefrom, closed with the prayer for general and equitable relief in the premises.

On the trial the court instructed the jury as follows:

"The plaintiff (Singletary) sues defendant Clark on the note read in evidence by the plaintiff, and claims as against Ellis a vendor's lien to the extent of said note on the land described in plaintiff's petition; and the defendants deny such indebtedness or lien.

" In rendering your verdict in this case, you will apply to the facts in evidence the following instructions of law applicable to the case. Of the credibility of the witnesses, of the facts in evidence, and the weight to be given to the evidence, you are the exclusive judges; but the law by which you should be governed will be given in this charge.

" First, as to the note: If the plaintiff has satisfactorily shown by the evidence that Holliman, the principal in the note sued on, is dead, or his estate is insolvent, then you will find for plaintiff against defendant Clark the amount of the note and interest, less the amount of the note and interest pleaded in offset by defendant Clark.

" Second, as to the lien: It is a well-settled principle of law, that the vendor or seller of land has a lien on the land for the amount of the purchase-money, not only against the vendee or purchaser himself and his heirs, but also against all subsequent purchasers having notice that the purchase-money remains unpaid. But if a person having a vendor's lien takes any other security, he is held thereby to waive the lien, unless he shows that it was not his intention to release the land as security.

" In this case, if the evidence shows that the note sued on was executed by Howell Holliman in part payment of the

purchase-money for the land described in plaintiff's peti-
tion, then the lien attached to the land; but if the Hollimans
and Clark signed the note as sureties, then the lien was lost,
unless the plaintiff has satisfactorily shown by the evidence
that it was not the intention of Robinson, Singletary & Co. to
release the land.    It is not necessary to secure the lien that
the note should be executed to the vendor or seller himself;
it is sufficient if, by the agreement or consent of the vendor
and the purchaser, it is executed to a third party, provided it
is agreed that the lien shall be retained.

"If you find, then, from the facts in evidence, that the note
sued on was in fact executed by Holliman in part payment
of the purchase-money of the land in controversy, and the
note was made payable to Robinson, Singletary & Co. by said
Holliman, with the consent of or by an agreement with
Kirksey, the vendor, and that, notwithstanding the note was
signed by sureties, Robinson, Singletary & Co. still relied on
the land as security, and only received the sureties to
strengthen the security; and further that Pollard, or other
subsequent purchasers in good faith, and Ellis, had actual or
constructive notice of such outstanding lien,—then the lien
exists, and the land is liable to be sold to satisfy the judgment
on the note; but if the foregoing facts have not been satis-
factorily established by plaintiff, you will find no lien on the
land, and find for defendant Ellis.

"As to notice to subsequent purchasers, it must be actual—
that is, knowledge of the facts must be brought directly home
to the party; or constructive—that is, the surrounding cir-
cumstances of the transaction must be such as to put a man of
ordinary prudence upon inquiry as to the true state of facts.

"To entitle plaintiff to a vendor's lien, subsequent purchas-
ers in good faith must have actually known before they pur-
chased that the lien did exist, or the surrounding circumstances
must have been such as to put them upon inquiry.    Vague
rumor or mere suspicion of an outstanding lien is not suffi-
cient in the absence of actual notice; the facts and circum-

stances must be such, that a man of ordinary prudence would seek information of the true facts of the case before purchasing.

"No general rule of law is laid down to govern questions of constructive notice, but each case must depend upon its own circumstances; and the jury in determining the question of notice should consider and weigh all the facts and circumstances in evidence.

"As before stated, to entitle plaintiff to have a lien on the land, besides proving that the lien in fact existed, as before charged, he must also show that Pollard and Ellis, before they purchased, had notice, actual or constructive, of the lien as just explained, and also any other subsequent purchasers in good faith.

"If Hogue was the real plaintiff in the suit of Hogue against Ellis, and the judgment and execution in said suit—Billingsley having no actual or constructive knowledge of any lien, purchased the land and paid for it, and afterwards sold it to Jagers & Byrd, and they had no knowledge of any lien, and paid for it, and Jagers & Byrd conveyed to Ellis,—the Ellis title is free from any outstanding lien; but if you find that the lien did exist, and believe from the evidence that Pollard and Ellis had actual or constructive notice of it before they purchased, and that Billingsley was the real plaintiff in the Hogue and Ellis suit, or the owner of the note sued on, and conveyed the note to Jagers & Byrd for Ellis's benefit, and by a previous arrangement between the parties, and Ellis in fact paid Billingsley the purchase-money through Jagers & Byrd,— then Jagers & Byrd were not *bona fide* or innocent purchasers; and in this case it is immaterial whether they or Billingsley had notice.

"If upon the whole case you find that the note sued on was given in part payment of the purchase-money for the land in controversy, and that the lien still exists on the land, so say in your verdict; but if otherwise, find for defendant Ellis."

The jury found a verdict for Singletary, as follows: "We

the jury find for the plaintiff, against defendant Clark, balance of note and interest, after deducting offset, $2,282.50. We further find that the note sued on was given in part for the purchase-money of the land described in plaintiff's petition, and that plaintiff has a vendor's lien thereon."

Judgment was rendered against Clark for the money due, and against Ellis, ordering the sale of the land. Motion for new trial was overruled, and Ellis appealed. The facts are sufficiently shown in the opinion.

*George W. Davis* and *Randolph & McKenney*, for appellant, cited the following authorities: 4 Kent, 152; Edwards on Bills, 313; Clark *v.* Hunt, 3 J. J. Marsh, 553; Mackreth *v.* Symmonds, 15 Ves., 329; Cowell *v.* Simpson, 16 Ves., 275; Grant *v.* Mills, 2 Ves. & Beam, 309; Parker County *v.* Sewell, 24 Tex., 239; Wynn *v.* Flannegan, 25 Tex., 778; Wasson *v.* Davis, 34 Tex., 159; Boos *v.* Eveling, 17 Ohio, 500; Snoddy *v.* Cage, 5 Tex., 106; Carter *v.* Wallace, 2 Tex., 106; Hall *v.* Jackson, 3 Tex., 309; Harrison *v.* Nixon, 9 Peters, 483; Glasscock *v.* Glasscock, 17 Tex., 487; Schermerhorn *v.* Vanderheyden, 1 Johns., 139; Winchell *v.* Latham, 6 Cowen, 690; Watt *v.* White, 33 Tex., 421; Orme *v.* Roberts, 33 Tex., 771; Gilkey *v.* Peeler, 22 Tex., 669; Swain *v.* Cato, 34 Tex., 395; Daniel *v.* Hill, 23 Tex., 571; Hatch *v.* Garza, 22 Tex., 187; Hancock *v.* Horan, 15 Tex., 511; Bailey *v.* Mills, 27 Tex., 437; Slade *v.* Young, 32 Tex., 668.

*Jackson & Jackson* and *W. B. Denson*, for appellee, cited the following authorities: 2 Pars. on Cont., 226; 29 Maine, 298; 3 Pars. on Cont., 277; 2 Story's Eq. Jur., sec. 1226; 24 Tex., 238; Wells *v.* Moore, 15 Tex., 521; Jones *v.* Primm, 6 Tex., 170; 22 How., 107; United States *v.* Linn, 1 How., 110; 1 Denio, 239; Pinchain *v.* Collard, 13 Tex., 334; 6 Johns. Ch., 423; Murphy *v.* Elliott, 6 Blackf., 482; 9 Richardson, (S. C.,) 56; Cordova *v.* Hood, 17 Wall., 1.

*Daniel B. Hatch*, also for appellee.

ROBERTS, CHIEF JUSTICE.—This is a suit brought on a note by Singletary, for the use of Wynne against W. H. Clark, one of four makers of a joint and several note, the other three being dead, to recover a judgment against Clark for the amount due on said note, and against John Ellis, to subject land to which he has the legal title, to a vendor's lien. Plaintiff recovered a judgment.   Clark did not appeal,—Ellis did.   The matter in issue is, whether or not the judgment subjecting the land to the vendor's lien, in discharge of the recovery against Clark on the note, is erroneous, as contended by Ellis, who has appealed.

The errors assigned are numerous, and cover all possible grounds of error that can be raised upon the proceedings in the record; and it will suffice to consider such questions as properly arise under them, without following them in detail.

It is contended by Ellis that no vendor's lien attached to the note sued on in the hands of the plaintiff.   The land was sold by Ellis to Kirksey, for which he took four notes, payable to himself, one of which he transferred to Hogue, in payment of a debt, and Hogue, in payment of a debt, transferred and indorsed it to Robinson, Singletary & Co., of which firm Singletary was the surviving partner.   It was proved that this note expressed that it was given for the land known as the Cedar Landing tract, on the Trinity river.   Afterwards, Kirksey sold the land to Howell Holliman, who executed three notes to Ellis, in place of the three Kirksey notes still held by him; and after he went into possession of the land under a deed from Kirksey, gave his note, signed also by Clark and two other Hollimans, to Robinson, Singletary & Co., in exchange for the Kirksey note held by them.   This substituted note expressed that it was given for the Cedar Landing tract of land. It was proved by Hogue that he, Kirksey, and Ellis knew of this substitution, and that he and Kirksey desired it to be done.   It was proved by Robinson that in receiving the Holliman note in exchange for the Kirksey note, it was expressly understood between him and Howell Holliman, who

made the exchange with him, that the vendor's lien on the
land was still retained, and that the other makers' names on
the note were only an additional security for its payment;
and further, that Hogue advised him to retain the vendor's
lien. The evidence in support of these facts is sufficient to
support the verdict of the jury; and therefore they must be
regarded by this court as established, in considering the ques-
tions of law arising upon them.

The mere fact of substituting the Holliman note for the
Kirksey note held by Robinson, Singletary & Co., did not
destroy the lien, if it then existed. (Pinchain v. Collard, 13
Tex., 336.) That the indorsement of the note by Hogue
to Robinson, Singletary & Co. did not release the lien is not
to be presumed, for it would have been contrary to the in-
terest of both parties. Such a presumption is further rebutted
by Hogue's desire for the substitution, and his advice to them
to retain the lien on the land in the exchange of the notes.*

There being sureties on Howell Holliman's note, thus sub-
stituted, might, if unexplained, raise a presumption that the
vendor's lien was released. When land is sold, and the pur-
chase-money is not paid, the lien attaches as matter of course.
Its release must be shown by such facts as show that it was
intended by the parties not to be relied on as a security for
the unpaid purchase-money. Taking a note, being mere
evidence of the debt, is not such a fact. Taking sureties on
the note is a fact tending in that direction, from which such
intention may be presumed. Not, however, if there is that
stated in the note which shows it was not so intended, as in
this case, where it is expressly stated that it was given for the
Cedar Landing tract, which could have been for no other
purpose than to indicate the intention of the contracting

---

* There was a difference in the amounts of the two notes exchanged :
one for $1,250, and the other for $1,312.50, which, had it been of any im-
portance in evidencing a release of the lien, might have been explained
more fully by Hogue, who seems to have taken some part in each and
all of the transactions involved in this suit.

parties not to release the lien by the additional security; and if this should be regarded ambiguous in its import, its object to that end was fully explained by the evidence of Robinson, who was properly allowed by the court to explain the circumstances under and purpose for which that expression was inserted in the note given by Holliman, just as he might explain that the note given for the land, if it had not been so expressed, without violating any rule of evidence.

The release of the lien is a question of fact dependent upon the evidence establishing the intention of the parties not to rely on the land as a security, or as one of the securities, for the payment of the unpaid purchase-money. (Parker County *v.* Sewell, 24 Tex., 238—referring to Macreth *v.* Symmonds, 15 Ves. R., 384; 4 Kent's Comm., 171; 2 Story's Eq. Jur., 590, 7th ed.)

We cannot say that the evidence was insufficient to establish that the lien was not released, as found by the verdict and sanctioned by the judgment of the court.

The next question arises upon the re-acquisition of the land by Ellis through Pollard.

Holliman and wife conveyed the land to Pollard, for ten thousand dollars in Confederate money paid down, under a promise to take up the notes which constituted a lien upon the land. Three of the Holliman notes that had been substituted for the Kirksey notes were in the hands of Ellis, only one of which was paid in Confederate money, by Holliman to Ellis, and one of said notes was then in the hands of Robinson, Singletary & Co.

The evidence as to whether Pollard had notice of the last-named note at the time of his purchase, though conflicting, is sufficient to sustain the finding of the jury in favor of it.

Pollard, rather than pay off the notes, transferred the land, with some stock on it, to Ellis, for three hundred dollars in gold, he then owning two of the Holliman notes for $1,312.50, for which the land was bound.

It is contended by Ellis that he holds the legal title through

a *bona fide* purchaser for a valuable consideration; and if the evidence is against him in that, by the notice to Pollard that still he has obtained the legal title, and holds it by a superior equity, by virtue of his two unpaid notes, which constituted the moving inducement for Pollard to convey to him for three hundred dollars; and that at least, having set out the notes in his answer, the court erred in not submitting a charge to the jury as requested by him, which would have enabled the jury to find a verdict which would have required the court to have enforced the lien of his two notes on the land concurrently with that of the plaintiff's note.   As to the first proposition, it is not perceived how his obtaining the title from Pollard would perfect his right to the land by virtue of his lien, when that title was acquired under notice of plaintiff's lien, or of the facts which constituted such lien, Pollard also having such notice; all which is so established by the evidence and confirmed by the verdict, as not to be disputed on error in this court.

As to the second proposition, the same answer may be given as was given by the court below in refusing the charge; which is, that it was not applicable to the case.   The charge requested was, in effect, that the jury should find whether or not his notes constituted a lien upon the land, if they so found as to note of plaintiff.   The reason why such a charge was not applicable to the case was, that the notes were not pleaded in a way to indicate the design of making them the foundation of an adjudication and decree in this suit, partitioning the interest in the land between those having liens, by a sale of it, and a division of the proceeds proportioned to their respective rights.

But his notes were recited in explanation of the purchase from Pollard, and to fortify the small consideration given to him for the land.

A further reason was, that other facts should have been stated by Ellis in that connection, particularly the present value of the land, and anything else that would have shown it to be

inequitable to appropriate a disproportionate amount of the value of the land in satisfaction of the lien of the one note sued on. As, for instance, if it were alleged and proved that the land is now worth only the amount of this note, it might be inequitable to allow it to be appropriated to the payment of this note, when there were two other notes of the same size in Ellis's hands that had not been paid. In that view also it would have been proper for Ellis to have consented to hold his legal title in trust, subject to the disposition of the court, in satisfaction of all of the valid liens that might be established in the suit.

If, however, the land was worth ten thousand dollars, the enforcement of a valid lien for about one fifth of its value would not have the effect to exclude Ellis from the benefit of his liens, for double that amount already secured by his legal title, without a suit from Pollard. These allegations were not made in the answer so as to raise the equity in favor of Ellis, and put the court in motion to give him such affirmative relief. He did not put himself in the attitude of aiding the court to adjust and to satisfy the equities, but preferred rather to stand upon his legal rights in the defensive as a legal cover and protection to whatever equities he had. So the case is exhibited in the pleadings and evidence throughout.

The next question arises upon the effort of Ellis to take shelter under Billingsley, as a *bona fide* purchaser for a valuable consideration, without notice of this lien attaching to the note sued on.

Giving the legal effect to the facts, rather than a minute detail of them on this question, after Ellis was in possession of the land under the Pollard deed, Billingsley obtained a judgment against him for a debt for an amount over four hundred dollars; had the land levied on as Ellis's property, and bought it at the sheriff's sale without any notice of the lien secured by the note of Singletary, on which this action is brought; after which Ellis got a conveyance of the land

through his agents, Jagers, Byrd & Co., for an amount something over two hundred dollars.

It is contended by Singletary that as Billingsley was a judgment creditor, and had his bid for the land credited on his judgment, thereby giving no other consideration for the land than his antecedent debt, embodied in his judgment, he did not stand in the position of a *bona fide* purchaser for a valuable consideration, as against this lien, of which he had no notice.

The reason of this rule is said to be, that "the judgment creditor shall be deemed entitled merely to the same rights as the debtor had, as he comes in under him, and not through him; and upon no new consideration, like a purchaser." (Burgh v. Burgh, Rep. Temp. Finch, 28; see note 2, Story's Eq. Jur., sec. 410, p. 388, Redfield edition.) This principle, however, is strongly combated in the case of Bayley v. Greenleaf, (1 Wheaton U. S. Rep., 46,) where it is attempted to be shown to be applicable to bankrupt creditors and the like, and not to creditors generally, who have obtained judgments and become purchasers under them; for otherwise their judgment liens would avail them nothing. This is referred to with approbation by Chancellor Kent, as entitled to general assent. (4 Kent's Comm., 154.)

It does not follow from this principle, however, that Ellis is in a position to protect himself, as Billingsley might have done; for he sold the land to Kirksey, and traded one of the purchase-money notes to Hogue, and he assigned it to Robinson, Singletary & Co., who took in exchange for it Holliman's note, now sued on, the lien being preserved all along, and Ellis was proved to be cognizant of the facts pertaining to it; and having, with such notice, obtained the title to the land from Billingsley, he seeks thereby to defeat the lien of the note that he put in circulation, and for which he obtained a full consideration.

Mr. Story, after stating the rule that one who has notice, deriving title through one who had no notice, is thereby

protected in his right, proceeds to say: "It is wholly immaterial what the equity is, whether it is a lien or an incumbrance, or a trust, or any other claim; for a *bona fide* purchase of an estate for a valuable consideration purges the equity away from the estate from all persons who may derive title under it, with the exception of the original party, whose conscience stands bound by the violation of his trust and meditated fraud; but if the estate becomes revested in him, the original equity will reattach to it in his hands." (1 Story's Eq., 420, p. 388, Red. ed., referring to Burgh *v.* Burgh, Rep. Temp. Finch, 28; Kennedy *v.* Daily, 1 Schr. & Lefr., 379, and other cases.)

This exception to a general rule seems to be peculiarly applicable to this case, as it is established by the evidence and as it is confirmed by the verdict, as it prevents one from defeating a claim, held by another upon a valuable consideration, obtained in good faith in the course of trade, for which he has received full value when he put it in circulation, and had full notice that it was in the hands of plaintiff when he obtained the title from Billingsley, by paying money for it, which simply discharged a debt which he was bound to pay at all events.

The questions discussed embrace, as it is believed, all the matters complained of that are thought to require a serious consideration; and although it might have been more satisfactory if the case could have been shaped and conducted so as to have settled and adjusted the equities of the respective parties, still, as the case is presented in the record, we do not conceive that there is any material error, requiring a reversal of the judgment, and therefore it is affirmed.

*G. W. Davis*, for rehearing.

Appellant asks the court to grant a rehearing in this cause. To grant a rehearing that the court may re-examine the grounds of its decision, could not, it is believed, work any possible injury to any one.

Under such a view of the case, we ask the leave of the court to submit such reasons as have suggested themselves why a rehearing should be granted. If it shall be found upon close examination that the equities of the case have not been reached, or that substantial justice has not been done, then of course a rehearing should be granted.

It is submitted as a general principle that whatever equities develop themselves or arise out of the facts alleged and proven, are the real equities in a case. (Fonblanque's Eq., §§ 2 and 3; 1 Story's Eq., §§ 26–32.)

The form and manner in which facts are alleged, it is believed, are not so material as that the facts themselves shall be alleged.

If the facts show equities, the relief they call for, it is submitted, should be granted. (Wells *v.* Fairbank, 5 Tex., 585; Horne *v.* Black, 24 Tex., 293.)

Nor would the fact—as may or may not have been the case with appellant in this cause—that a party mistook his rights, preclude the court from granting the relief the averments and proof showed he was entitled to. (Hipp *v.* Hutchett, 4 Tex., 24; Spann *v.* Sterns, 18 Tex., 570; Smith *v.* Clopton, 4 Tex., 114; Smith *v.* Corcoran, 7 La., 52; Trammell *v.* Watson, 25 Tex. Supp., 216.)

In this case appellant avers that the two Holliman notes he holds were given for part of the purchase-money of the land described in the pleadings; that said notes belong to him and are unpaid, and that he has a vendor's lien upon the land in question to secure their payment; and he prayed for "general and equitable relief in the entire premises." Under this prayer, it is submitted, the court would have power to grant full relief and all the relief the equities in the case called for. (Kelly *v.* Payne, 18 Ala., 371; Bourke *v.* Vanderlip, 22 Tex., 223; Filkin *v.* Ferris, 18 Barb., 581; Texas *v.* Hardenberg, 10 Wallace, 86, 89.)

Under this prayer, being one for general relief, the court might not only grant full relief, but different relief. Where

a party mistook the law and his rights under it, and prayed for particular relief that could not be granted, and also prayed for general relief, it is believed the court could refuse the particular relief prayed for, and, under the prayer for general relief, could grant the relief the party was entitled to, though that relief might be different from the relief prayed for. (1 Danl. Ch. Pl. & Prac., p. 437; Bailey *v.* Burton, 8 Wend., 353; Kelley *v.* Payne, 18 Ala., 371; Hiem *v.* Mill, 13 Ves., 119; 17 La. Ann., 37; Lingan *v.* Henderson, 1 Bland., (Md.,) 251; Wiswell *v.* 1st Cong'l Church, 14 Ohio State, 31.)

Moreover, in equity, it is conceived, the rule of pleading applicable to the defendant's answer is less strict than that which governs the plaintiff in framing his bill. (Story's Eq. Plead:, § 255; Crain *v.* Barnes *et al.*, 1 Md. Chancery, (Johns.,) 155–7; Ory *v.* Winter, 4 La.; (Martin,) N. S., 279 to 283; Cunningham *v.* Wheatly, 21 Tex., 185.)

That the court below erred in refusing to give the following charge asked by appellant:

" In the event the jury should find for the plaintiff, then they will further find whether the two notes given in evidence by Ellis, signed by Holliman, were executed by Howell Holliman in part payment of the purchase-money of the land described in plaintiff's petition, and by the mutual agreement of said Holliman, Kirksey, and Ellis, were exchanged for the Kirksey notes previously in the hands of Ellis as the original vendor of said land."

The refusal of the court to give this charge took away from the jury the consideration of the appellant's rights, and put it out of the power of the court to decree upon the verdict the relief appellant was entitled to.

If this charge had been given, it is assumed—for the proof abundantly warrants the assumption—that the jury would have found affirmatively that the two Holliman notes owned by appellant were unpaid, and were given in part payment of the purchase-money of the land in controversy; and then upon that verdict the court could have decreed full equitable

relief to both appellant and appellee, and decreed the land to be sold and the proceeds of the sale divided *pro rata* between appellant and appellee. The propriety of giving this charge is particularly enhanced when we consider the nature of the plaintiff's action, and especially the averments of his last amendment. (Smithwick v. Andrews, 24 Tex., 494; 17 Tex., 558, 559; Dogget v. Rankin, 31 Cal., 326–328; Gilkey v. Peeler, 22 Tex., 669; Chamblee v. Tarbox, 27 Tex., 146, 147.) The verdict of the jury is erroneous, because it is not responsive to the whole of the case made by the pleadings and the proof, but only embraces the rights of the appellee, and does not embrace or respond to the rights of the appellant.

That the verdict of the jury would have been different had the above charge been given, is manifest from the verdict itself, which is as follows: * * * * *

" We the jury find that the note sued on was given in part for the purchase-money of the land described in the plaintiff's petition, and that the plaintiff has a vendor's lien thereon"— evidently implying under the case made that appellant's two Holliman notes were given for the unpaid balance of the purchase-money.

It may be well enough now to look a little closely into the reason assigned by the court below for refusing the charge asked. The reason assigned is, "because the charge is not applicable to the case." Let us see how well founded that reason is. If a party mistakes the law and his rights under it, and states his rights in the form suggested by that mistake, it is submitted that the court would not be precluded by the form in which his rights or the facts upon which they rest were stated, from granting the relief the facts intrinsically and inherently entitled him to.

The defendant's answer was not excepted to by the plaintiff; and his proof as to the said Holliman notes having been given as substitutes for the original notes of Kirksey, (Ellis's immediate vendee, Holliman being his sub-vendee with notice,) was in no wise objected to. And under such circum

stances, it would seem, defendant was entitled to particular liberality, when it was apparent the ends of justice required it. (18 Barb., 581.)

The insufficiency of the reason assigned, it is believed, will be more manifest upon taking into consideration the fact that the court below admitted appellant's evidence to establish his rights as alleged, and then refused to charge the law applicable to the facts he had been permitted to prove.

Appellant's equities existed and were not affected or changed by the purchase from Pollard. Whatever those equities were before the purchase, they remained afterwards. That before the purchase from Pollard appellant's right or equitable ownership of the land in question was the right to subject the land to the payment of his two notes, (waiving the doctrine of superior right in Ellis as original unpaid vendor,) if the land should sell for enough to pay all three notes; and if not for enough to pay all of them, then for his *pro rata* share of the purchase-money. Before the purchase from Pollard the appellant had an equitable interest in the land, to secure the payment of his two Holliman notes, and appellee had an equitable interest in the land to secure the payment of his note, while Pollard had the naked legal title. After the purchase from Pollard, appellant had the legal title acquired from Pollard, and the equitable right to have his two notes paid out of the land; and the appellee had the equitable right to have his note paid out of said land. That appellant's equities were not affected by the purchase from Pollard will be more manifest from a wider view of the principle stated. Suppose appellant before his purchase from Pollard had transferred his two Holliman notes to a third party: would not such third party have had the right after the purchase from Pollard to enforce his vendor's lien against the land and have it sold for the payment of his two notes? If he would have that right, upon what would such right rest? Would it not be because the vendor's lien was an incident to the note to secure its payment, and followed it into whosesoever hands it

went? Would not that incident attach to the notes and follow the ownership whether in one person or another? The ownership being in appellant, what good reason can be given why the incident should not attach to them in his hands as against other outstanding equal liens or equities, whether he be dual or single? (Holloman *v.* White, 41 Tex., 62; Jackson *v.* Hill, 39 Tex., 493.)

### ON MOTION FOR REHEARING.

ROBERTS, CHIEF JUSTICE.—In addition to what is said in the opinion, it may be added that the defendant Ellis, in his amended answer, presented and relied on three distinct defenses to defeat the suit of the plaintiff as to the vendor's lien upon the land.

1st. That the vendor's lien had been waived on the original note by its assignment, and had been lost by the substitution of the Holliman note sued on, and by taking sureties upon the substituted note.

2d. That Ellis had a legal title through Pollard, a purchaser without notice of the lien attaching to the land by this note. In this part of the answer the two notes held by Ellis were set out ostensibly in explanation of the reason why Pollard would make a sale of the land to him for a very small consideration, in support of the validity and good faith of said sale. When presented in that point of view, and for such a purpose, the plaintiff may have had no occasion to make any defense against them. Had these notes been made the chief ground of an equitable defense, separately and distinctly presented in the nature of a cross-bill seeking affirmative relief, instead of being made, as they were, merely incidental and auxiliary to a legal defense, then plaintiff would have had fair notice, and might have shown, if he could, that the two notes held by Ellis had been paid, or from some other cause were not entitled to a proportionate share of the proceeds of the land, if sold to discharge the liens upon it. The fact that, as the case stands upon the record now, it appears improb-

able that he could have done so, does not alter the question as one of pleading. Each party to a suit has a substantial right to be confronted with pleadings of his opponent, so shaped as to give him reasonable notice of what is designed by them. As these notes were pleaded in connection with and as part of a well-defined separate defense of legal title under Pollard, it could hardly have been anticipated before the trial that they were pleaded in the way of a cross-action for affirmative relief on the part of Ellis; and hence the plaintiff could not be expected to have made any defense against said notes in reference to that view of the case, either in his pleading or in his proof.

3d. That Ellis had a legal title through Billingsley, who was a *bona fide* purchaser without notice of this lien.

After the pleadings have been made up and the evidence has been submitted on the trial, a party should not be allowed, by asking a charge of the court, to give a direction to the case of which the opposite party was not fairly notified by the pleading before the trial commenced.

MOTION OVERRULED.