THOMAS J. CLEMENTS ET AL. v. A. C. NEAL.

(Case No. 859.)

1. VENDOR'S LIEN — NOTE TO THIRD PARTY. — It is not essential, in order that the purchase money due should preserve the attributes and privileges of a vendor's lien, that the amount due should be made payable to the vendor; it may be made payable to other parties at the direction of the vendor; and a new note may be given payable to a different party. The lien is unaffected thereby. Robertson

*v.* Guerin, 50 Tex., 317; Ellis *v.* Singletary, 45 Tex., 27; Wright *v.* Wooters, 46 Tex., 383.

2. HOMESTEAD.— Whether the plaintiff obtains the evidence of his security or lien in one way or another, unless he waives it, he possesses a right precedent and superior to homestead rights subsequently acquired. Where the plaintiff held a deed of trust on land of the defendant, and the defendant, desiring to exchange his land with a third party, arranged with the plaintiff to surrender the deed of trust and take a lien on the land received in exchange, which was done, and the land so received conveyed to the plaintiff, who then transferred it to the defendant, taking a note for the amount of money secured by the deed of trust surrendered, reciting that it was for the purchase money of the land conveyed, the lien thereby created having been acquired before homestead rights of the defendant had been established, the land was subject to sale for the satisfaction thereof.

3. PRACTICE IN SUPREME COURT.— Rulings of the court preserved by bill of exceptions, not assigned as error, will not be noticed and will be considered as waived. Art. 1037, Revised Statutes.

APPEAL from Rusk. Tried below before the Hon. A. J. Booty.

This was an action brought by the appellee against Thomas J. Clements, one of the appellants, on a promissory note payable to himself, which recited that it was given for the purchase money of land described therein, admitting certain payments, and praying judgment for the balance unpaid and a decree for the sale of the land. Harriet E. Clements, the wife of the defendant, intervened, and the pleadings of herself and of her husband, and the case developed in evidence under the issues, presented as the principal material question for solution, whether the note and lien claimed by virtue of transactions between the parties were or were not in derogation of the constitutional and statutory homestead rights of Mrs. Clements, and the land thereby improperly subjected to forced sale.

Thomas J. Clements having purchased a tract of land on which he resided from one Gaston, there was due and unpaid $1,000 of the purchase money; besides which incumbrance, he and his wife had executed, to secure the payment of a debt to one Lawrence, for goods sold by the latter to Clements, a deed of trust on the said land, which was duly

acknowledged by them, dated 5th day of May, 1874, which deed of trust and debt afterwards were held and owned by the plaintiff. This tract of land was shown by the evidence to be worth $1,400 or $1,500. Clements in his testimony stated that he had at the time of purchase paid $1,000 to the vendor, and at the date of the transaction which has induced this suit, still owed $1,000 on account of said purchase. In January, 1875, Gaston urged payment of the $1,000; Clements was unable to pay. One Lowrie owned a tract of land and premises worth $500 or $600. Clements in his testimony estimated its value at $900, and negotiations were entered into between Clements and Lowrie for an exchange with each other of their respective places. Lowrie was to allow in the exchange the difference of $1,000 in favor of Clements, and to assume the payment thereof to Gaston, and, in pursuance thereof, Gaston did, when the matter was consummated, surrender to Clements his $1,000 note and took in lieu thereof Lowrie's note for the same amount. Lowrie, however, declined to make the exchange of places unless the deed of trust held by Neal for $400.23. before referred to, should be released or in some manner arranged, and in the language of Lowrie, who testified on the trial, "I told Neal there was a trade pending between me and Clements; that we wanted to swap or exchange places, and that I would have nothing to do with the trade till the Gaston place which I was trying to trade for from Clements was freed from his, Neal's, lien." This statement in substance was also made by the plaintiff in his testimony, and its truth is rather confirmed than questioned by the testimony of Clements himself, who, in stating the facts relating to the inducements to and the negotiations preceding the execution of the note sued on, stated that "he had agreed to exchange places with Lowrie, but the plaintiff had a deed of trust for $400.23 on his land, and Lowrie agreed to give him $1,000 'to boot;' Neal said he would give up his lien on the Gaston place for a deed from Lowrie and wife to Lowrie's place, and take his (defendant's) note for same amount, with lien on the Lowrie land; that Lowrie

made the deed to plaintiff by consent of Lowrie, of himself and of the plaintiff, to secure him in the amount of money secured by trust deed on the Gaston place. That he supposed Neal told Lowrie he would not give up his lien on the Gaston land until he got a deed to the Lowrie land." The testimony given in the case shows that in January, 1875, the defendant T. J. Clements, Lowrie and Gaston, went to the residence of the plaintiff, and in the interview between all the parties, the proposed exchange of places, with the terms proposed, as has been heretofore indicated, was developed in the conversation then had.

Some time afterwards, during the same month, Lowrie and defendant, T. J. Clements, went to the house of the plaintiff, where deeds were prepared, but not at that time acknowledged, one from Clements and wife, conveying the Gaston place to Lowrie; the other from Lowrie and wife, conveying the land here sought to be subjected in this suit to the payment of the note sued on, to the plaintiff. Both deeds were acknowledged, and the grantees respectively received their deeds. The note sued on is dated May 5, 1875, on which day, as appears from the evidence, the plaintiff executed a deed to the defendant, Thomas J. Clements. The deed of trust was delivered up to Clements, together with the note secured by it. The defendants and Lowrie interchanged their respective possessions of said tracts of land by removal of both families on the same day, in January or February, 1875.

The deed of trust was given to secure the payment of a debt for goods, wares and merchandise, sold by one Lawrence. The plea of intervention of Mrs. Clements alleges that the land prayed to be condemned to sale is the homestead of herself and husband; that the plaintiff never had title to the same, nor was he ever the owner or vendor of the same; that she and her husband were the owners thereof, having title thereto, free from the lien of plaintiff, as claimed by him, for the reason that said land was their homestead when said pretended lien was created, to the making whereof she never consented, and insists that she is

not bound nor affected thereby; and because the lien claimed was given to secure the payment of goods, etc., sold to her husband, and not for any part of the purchase money, as averred by the plaintiff.

The cause was submitted to the presiding judge, upon the law and evidence, and the court rendered judgment for the plaintiff, against Thomas J. Clements, for the amount of the note sued for, and decreed the land subject to the debt, with an order for sale.

*Drury Field*, for appellants.

*Morris & Gould*, for appellee.

WALKER, P. J.—The appellants assign several grounds of error, nearly all of which refer to and reach the substantial merits of the determination which was made by the court below, in giving to the plaintiff the full measure of relief claimed by him in his petition, and they need not be now here inserted, as we shall for the present discuss this appeal upon the consideration of the fifth and last assignment of error, to wit: "The court erred in adjudging the land subject to the pretended lien of the plaintiff; said judgment for appellee being contrary to law and evidence."

The appellants in this case do not seek to attack nor set aside the conveyance which they made to Lowrie for fraud or other cause, nor for a rescission of the contracts entered into by them with any of the parties with whom the several transactions which have been detailed occurred, nor is it pretended by either of them that they did not intend to convey, nor that they did not actually convey, as they originally intended to do, by proper conveyance, their former homestead to S. H. Lowrie; but they insist that, in effect, the contracts between themselves, Lowrie and the plaintiff, in connection, perhaps, with the actual interchange of possessions, vested in them homestead rights to the recently acquired premises as against said Neal, whose claim they insist was not that of a vendor of the land, and therefore

superior to the homestead right, but was simply an ordinary debt, to the satisfaction of which the homestead could not be subjected by forced sale.

The exchange of places which was contemplated was based upon a harmonious understanding of all the material facts upon which the transfers were proposed to be made by all concerned, so far as may be judged of from the evidence; it was well understood that Lowrie was to pay the defendant Clements a difference between the places of $1,000, and no more; it was equally well recognized as a fact, that the incumbrance upon the Clements place, by deed of trust, of $400.23, must be released or paid through and at the expense of Clements as the condition or consideration upon which Clements could acquire in exchange the Lowrie place; Clements recognized that fact, and undertook to disincumber his said homestead from the said incumbrance. This consideration was the purchase money of and for the conveyance of Lowrie to himself (Clements) of the land he bargained for, and it was not the less so whether evidenced by a personal obligation to Lowrie to discharge the lien in money to the holder of the lien, by deposit of the amount with Lowrie for his assurance against loss on account of the lien, or by undertaking to procure the holder of the deed of trust to remove the incumbrance. The defendant Clements adopted the last named alternative, and it was agreed that the Lowrie land should be chargeable with this purchase money consideration, and the Clements tract released therefrom, and Clements agreed to purchase said tract of land (or consummate the exchange of tracts) on the terms mentioned.

This being then the consideration or purchase money, the vendor's lien to the extent of the amount thereof attached to the land, and it is superior and precedent to the homestead right, *quoad* the amount thus secured. No person can claim a homestead right as against incumbrances prior to its purchase, until it is paid for. Farmer *v.* Simpson, 6 Tex., 310. And it is not essential, in order that the purchase money due should preserve the attributes and privileges of a

vendor's lien, that the amount due should be made payable to the vendor; it may be payable to other parties at the direction of the vendor; and a new note may be given payable to a different party. The lien is unaffected thereby. Robertson v. Guerin, 50 Tex., 317; Ellis v. Singletary, 45 Tex., 27; Wright v. Wooters, 46 Tex., 383. And in the application of these maxims to the transaction, it results that Lowrie held the vendor's lien for the amount of the value of said incumbrance, which was by him directed and appointed to be paid to the plaintiff, the owner thereof. And so, whether the plaintiff obtained the evidence of his security or lien in one shape or another, unless he waived the same, he would possess a right prior and precedent, and superior to the homestead right of the defendants; their rights in that regard would be subordinate to the vendor's lien. The facts allow the consideration of another view of the defendants' rights yet more more stringently opposed to the assertion of homestead rights as being superior to those claimed by the plaintiff as an actual vendor. The plaintiff, indeed, received an absolute deed, and conveyed the land some months afterwards to the defendant Clements, the latter executing to him the note sued on and recognizing him as his vendor, and the amount due as the unpaid purchase money. It was shown by the plaintiff's testimony that before he would consent to release his lien on the Clements land, he made inquiry as to the value of the Lowrie land, and ascertained that, if he should get it, one Chapman would purchase from him at the price of $500; that he then told Lowrie he would give him the deed of trust and note secured by it for the land, and at the same time he told Clements he would sell him the land for the sum of money secured by the deed of trust, but that he was under no obligation to sell to him at any price, and that he had the same right to sell to any other person. The note and deed of trust securing it was received by Clements, through whom he does not know. Plaintiff stated he gave them to Lowrie when the deeds were written and prepared for execution and acknowledgment. Clements denied receiving them from Lowrie. There

is nothing in the evidence to indicate that any of the paper
transactions between the parties were not made in pursu-
ance of their well understood agreements; and on the face
of the various deeds and the note it would seem ostensibly
that the plaintiff was in fact the vendee of Lowrie, notwith-
standing that the evidence relating to the deed of trust, just
stated, is calculated to obscure the real intents of all the par-
ties, and if so, then, in the strictest sense, when the plaintiff
conveyed to the defendant Clements the note given, the
former was certainly for the purchase money, and the rela-
tion between them of vendor and vendee was exact and con-
summate, and its legal consequences not less indisputable;
and the defense set up would not possess in such case even
the appearance of plausibility. But, assuming that in car-
rying out a mutually understood agreement, whereby Clem-
ents' former homestead should be relieved of the deed of
trust, and the stipulated purchase money, as it may for con-
venience be called, due Lowrie thus satisfied, and, in order
to secure the plaintiff in his debt, that the latter, with Clem-
ents' consent, took the deed from Lowrie and wife as a
security and in trust of Clements, if it was delivered and
accepted with that purpose, it operated, in equity, as a mort-
gage as between himself and Clements (Mann v. Falcon, 25
Tex., 275), more specific and assured effect to which was
afterwards given by the deed made by the plaintiff to Clem-
ents, and contemporaneous note with acknowledgment of
the purchase money consideration, to wit, the land embraced
in it.   Under either hypothesis, the land is chargeable with
the plaintiff's debt as a vendor's lien for the purchase money.
Clements acquired only the equity of redemption of the
property conveyed by Lowrie to Neal, and by the latter to
himself, under the most favorable view to be taken of the
whole transaction between the parties to it.   The debt of
Neal was in truth a part of the purchase money of the prop-
erty and constituted a right in it prior and superior to the
homestead privilege of Clements and his wife, which could
not attach until the debt was discharged.   Monroe v. Bu-
chanan, 27 Tex., 241.

Brief attention may now be given to the remaining assignments of error. The second error assigned is that "the court erred in giving judgment against appellants, the facts abundantly showing that the lien claimed by appellee was attempted to be created by consent of Thomas J. Clements and A. C. Neal on the defendant's and intervenor's homestead without the consent of Harriet E. Clements, the wife of Thomas J. Clements, said land being then occupied as a homestead by appellants." The third assignment of error is, "because the evidence shows the appellee's claim to be only a mortgage for a simple debt for goods and merchandise, under which the homestead cannot be sold." The fourth assignment is that "the court erred in giving judgment for plaintiff condemning the land to be sold under the same, the evidence showing that it was not the purchase money of the land or any part of it."

The views already expressed upon the consideration of the fifth assignment of error are deemed to include the necessary and like deductions to be drawn from a consideration in detail of the second and fourth assignments of error just quoted, unless the second assignment means to insist that the mere act of actual occupancy by the appellants of the land now the subject of controversy gave to them independent rights as homestead claimants. Such rights, sacred and inviolable though they be, are, like others, relative; and complete as the right enjoyed by mere possession might be as against an ordinary creditor, it needs must yield to a right in another superior and paramount to it.

The evidence in the case does not maintain the proposition made in the second assignment, which assumes that the intervenor had acquired already a homestead right in the land, which in fact she had not. She and her husband voluntarily conveyed and abandoned a former, and sought to acquire another homestead. Her consent, in order to charge the land to be acquired for a homestead, was not necessary to the validity of the contract. "A homestead is not acquired, within the meaning of the law, until title to the land on which such homestead is established has been

acquired; or, at any rate, until the party is in condition to demand title; and all liens acquired before the homestead has been established must be raised, or it will be subject to forced sale for the satisfaction of such liens." Farmer *v.* Simpson, 6 Tex., 310.

The error complained of in the fourth assignment has been already fully discussed and determined in this opinion. And under the view which we have taken of the case, it is wholly unnecessary to notice the ground relied on in the third assignment; we need not enter upon an abstract discussion of the nature and effect of the plaintiff's claim further than to determine, as we have done, that it is a valid debt, not questioned in pleadings or otherwise as to its integrity, and is a lien prior and superior to the rights of homestead claimed by the appellants. To maintain that one possessed of a tract of land incumbered by a mortgage to which the homestead right was subject and inferior might exchange it for another on condition of a like interchange of the locality of the lien and incumbrance as the consideration of the exchange, and thereby create in him an indefeasible title discharged of the lien thus substituted, would tax the ingenuity of the legal mind in its search for a reason valid in law or in good conscience. It would, indeed, be a dismal travesty upon the maxim that "the common law is the perfection of human reason." Whilst our beneficent laws, by the most splendid liberality, directed under a noble policy, shield the family in its home, regardless of the condition of the former, or the value of the latter, against the chances of the warfare of life, they contain no invitation to tempt the acquisition of that valued possession at the expense of the vendor, or of one having a prior legal claim against it, entitled to satisfaction.

The first assignment of error complains that the court erred in overruling the defendants' general demurrer to the plaintiff's amended first and second supplemental petition. The ruling of the court on the pleadings, if entered of record, is not otherwise manifested in the transcript than in the appellants' bill of exceptions, which has reference to

the rulings of the court upon pleadings other than the
"plaintiff's amended first and second supplemental petition;"
we are unable, therefore, to assume that the ground of com-
plaint is well founded. The rulings which are preserved by
the bill of exceptions, not being assigned as error, will not
be noticed, " and shall be considered as waived." Art. 1037,
Revised Statutes.

The conclusion at which we have arrived upon the whole
case is, that there is no error in the judgment of the district
court, and we determine and award that the same be affirmed.

AFFIRMED.

[Opinion delivered December 13, 1879.]